IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 0:17-1145-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| CHAVIS LITTLEJOHN | ) | |
| | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 41). Seeking compassionate release, the defendant states that the threat posed by the ongoing COVID-19 pandemic, coupled with his chronic medical problem of asthma, constitute extraordinary and compelling reasons for consideration of his immediate release.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

1

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the

>factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*,

3

836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

### *Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a

request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government concedes that the defendant has properly exhausted his administrative remedies. Thus, the court will proceed to review the matter on the merits.

## DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

5

*The Defendant's Motion for Compassionate Release*

In his motion (ECF No. 41), the defendant contends that he is entitled to immediate release because he suffers from chronic asthma since childhood.  He contends that these conditions, coupled with the COVID-19 pandemic, necessitate his immediate release from custody for a 120-month sentence imposed on November 28, 2018.

The Presentence Report (PSR) (ECF No. 37), prepared in connection with the defendant's November 2018 sentencing, reveals the defendant's assertion that he is in overall good physical health and that he suffers from asthma and common allergies which are controlled with over-the-counter medications.   (ECF No. 37 at ¶ 40).

The defendant also complains that the court would violate his due process and equal protection rights under the Fifth and Fourteenth Amendments to the Constitution if the defendant's motion for compassionate release was not granted.  However, such constitutional claims are not properly before the court on a § 3582(c)(1)(A) motion.

The government acknowledges that the defendant suffers from asthma which is a condition that the CDC has concluded *might* increase the risk of illness from COVID-19.  The government also suggests that the defendant's medical ailments are well-controlled with prescription medications and do not present a serious physical or medical condition that could diminish the defendant's ability to provide self care at the BOP.  The government has not provided any information to the court on whether or not the defendant has been vaccinated for COVID-19.

6

Over the government's opposition, the court concludes that the defendant's medical conditions, together with the COVID-19 pandemic, demonstrate an extraordinary and compelling reason for consideration of release.

Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with particular review of the defendant's post-sentencing conduct while incarcerated.

In support of this conclusion, the court will address the § 3553(a) factors in turn:

1. *Nature and Circumstances of the Offense.*   After a traffic stop for speeding, the defendant was found to be in possession of more than one kilogram of methamphetamine and $9,100 in cash and he was arrested on state charges.  On January 11, 2018, he was arrested by federal authorities for the instant federal offense.

The defendant was the sole defendant named in a one Count Indictment filed on December 6, 2017.  He pleaded guilty, without a written plea agreement, to Count 1 which charged him with Possession with Intent to Distribute 500 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  For sentencing purposes, he was held accountable for 2,092 grams of methamphetamine.

The Presentence Report (PSR) (ECF No. 37), calculated the defendant's total offense level at 29, with a criminal history category of I.  This yielded a mandatory minimum sentence of 120 months.  Without the mandatory minimum, his Guidelines would have been 87 to 108 months.

On November 28, 2018, after the defendant's objections were withdrawn, the court adopted the PSR and sentenced the defendant to 120 months imprisonment and 5 years of supervised release. The defendant did not appeal his conviction and sentence.

The defendant has served approximately 26 months of his 120-month sentence and is currently scheduled to be released in July 2027. He is housed at the Ashland Federal Correctional Institution.

2. *History and Characteristics of the Defendant*. The PSR sets out in greater detail the defendant's characteristics, as well as any criminal history and prior convictions. The defendant is now 34 years old. He is single and has 2 children, both of whom reside with their mother. The defendant was reared by his maternal grandparents until the age of 12 and then moved in with his mother until his early 20s. The defendant has one brother. He described a good upbringing and denied any abuse during his formative years. He is estranged from his biological father.

The defendant is a 2007 graduate of Union High School in Union, South Carolina. He has never held formal employment and receives social security disability benefits.

*Post Sentencing Conduct*

On August 25, 2021, the defendant was sanctioned for a disciplinary violation involving disruptive conduct—high. He was also sanctioned for refusing a work assignment that same date.

Commendably, the defendant has taken numerous educational courses including typing, anger management, parenting, history, sales skills, commercial drivers license, HVAC

8

certification, and other wellness courses.

The defendant states that if released he will live with his mother in Union, South Carolina where he has strong family ties. He will reapply for social security disability and plans to seek employment.[2]

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents. The defendant has served only a small portion of his 120-month sentence.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling

---

[2] The defendant also raises as a ground for his immediate release the fact that he has a loving and supportive family ready to receive him if he is released. The court understands this argument, has carefully considered it, and must respectfully reject it. To reward someone with early release because he is fortunate enough to have a loving and supportive family would work to the disadvantage of another defendant, who committed the same crime under the same circumstances, who did not have family support. This would create a significant disparity in sentencing which the law should not recognize. Thus, although the court has carefully considered this argument, it must respectfully reject it.

against the defendant's immediate release.

7. *Need to Avoid Unwarranted Disparity*. The defendant was the sole individual indicted in this case. Compared with the culpability of similarly situated defendants, his imposed sentence was and is in line with statutory factors.

In sum, the § 3553(a) factors discussed above caution against a sentence reduction at this time.

## CONCLUSION

For the foregoing reasons, the court determines that the defendant has demonstrated an extraordinary and compelling reason due to his medical conditions. However, the defendant's release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct discussed herein. The motion (ECF No. 41) is respectfully denied.[3]

IT IS SO ORDERED.

March 17, 2022Joseph F. Anderson, Jr.
Columbia, South CarolinaUnited States District Judge

---

[3] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")